Manning, C. J.
The transcript in this case is so voluminous, the pleadings so prolix, and the issues sought to be presented so numerous and contradictory, that the patience and industry of the' Court has been *680 severely taxed in its examination. The issues necessary to be decided are few and simple, and can be embraced in a narrow compass.
The plaintiffs — R. T. Jennings, John Chaffe, Brother & Son, and Chaffe & Bell, assignees of Winston Morrison & Co., bankrupts — join in an hypothecary action against several defendants for the enforcement of a conventional mortgage executed by H. E. Yickers in favor of Winston Morrison & Co., of date 1st October, 1872.
No defence was opposed to the action by any of the defendants except Mrs. Mulhern.
• The following is an accurate and brief statement of the facts disclosed by the record:
EL E. Yickers, being indebted to Winston Morrison & Co., executed in their favor on 1st October, 1872, a conventional mortgage on his property situated in Richland parish, the debt thus secured being evidenced by three promissory notes for $12,650 each, due respectively 1st of January, 1873,1871 and 1875, with 8 per cent per annum interest from date, which mortgage was duly registered in the Recorder’s office of Richland on the 1st day of October, 1872, the day of its execution, the property now in possession of Mrs. Mulhern and sought to be subjected to this mortgage being fully described therein. It appears that there was a verbal agreement between Yickers and Winston Morrison & Co. that in case the former could sell any of the mortgaged property the latter were to receive the purchase price and cancel the mortgage upon the property sold.
On the 5th of July, 1873. W. Morrison & Co., the successors and liquidators of Winston Morrison & Co., pledged to R. T. Jennings, as collateral security, one of the Yickers notes — that due 1st January, 1871. On the 25th of August following they sold to John Chaffe, Brother & Son another of the notes. The third note was surrendered as part of their assets in bankruptcy and was sued on herein by their assignees.
On the 12th of August, 1873, H. E. Yickers sold to P. S. Mulhern the lands upon which this mortgage is now sought to be enforced. Hiram Morrison, of the firm of W. Morrison & Co., was present,received the purchase price, which is credited to Yickers on the note sold to Chaffe, and signed an order directing the Recorder to cancel the mortgage upon the lands sold.
This order, with the deed from Yickers to Mulhern, was presented to the Recorder by Morrison and Mulhern for record. That officer refused to cancel the mortgage as requested, assigning as a reason that he had no authority to do so, unless Mr. Morrison could produce the notes. Since he could not do this, both documents were left with the Recorder by Mulhern and Morrison, the latter promising to send up the notes as soon as he reached New Orleans, on receipt of which the mort *681 gage was to be cancelled and the deed recorded, Mulhern stating he would not pay for the deed unless the mortgage was cancelled.
Morrison, on reaching New Orleans, instead of sending up the notes as promised, gave credit upon one of them for the notes received from Mulhern and negotiated it to John Chaffe, Brother & Son, without notice of the transaction above related. The note due 1st January, 1874, having been previously pledged to B. T. Jennings.
Yery soon afterwards Mr. Mulhern died, and his wife having qualified as administratrix of his estate, this suit was brought against her. The original mortgage from Yiekers affected three several pieces of property; one of which at the institution of the suit was in possession of H. E. Yiekers; one of W. W. Farmer; and one of Mrs. Mulhern, who are the three defendants. The suit was filed 11th October, 1875. On 26th of March following, Jennings, with consent of Morrison, sold his note to John Chaffe, who also subsequently purchased that sued upon by Chaffe & Bell, assignees. *
The defendant in her answer filed October 26th, 1875, urges as her defence that the mortgage herein sought to be enforced, was in effect cancelled and extinguished by the order of 12th August. That Morrison & Co. were the owners of the notes at that time, and the present holders having acquired subsequent, by and with knowledge of this transaction, are bound thereby. She propounds interrogatories to Chaffe and Jennings to prove this defence. Jennings answers that he held the note prior to the sale to Mulhern (acquired it 5th July), and knew nothing of any agreement with Yiekers or Mulhern. Chaffe answers that he acquired the note held by him on 25th August, but without any knowledge of Morrison’s promise to have the mortgage cancelled. The defendant thereupon filed an amended answer, and called in warranty H. F. Yiekers. On the 17th of September, 1877, she filed an exception, in which she urged the dismissal of the action upon three several grounds, Viz: That Farmer, being one of the defendants, could not represent the plaintiff; that the plaintiffs are all really acting in the interest of the defendant Yiekers, who is charged with being the owner of the notes, and the sole person interested in prosecuting this suit; and that there is a misjoinder of parties.
The court tried the exception, but did not decide it. It is not easy to see why, since time had been consumed in trying it. The exception was tumbled into the omnium gatherum, yclept the merits — a practice which not infrequently wastes time and labour. An exception, which if maintained, will terminate the suit, ought to be tried and decided in limine.
Jennings held his note as collateral, and subsequently sold his interest in it, and the suit upon it, to Chaffe, who at length became ,the *682 owner of the interests of the assignees in bankruptcy of W. Morrison & Co., and of the other members of the Chaffe firm. When interrogated specially upon the nature of his purchase of these three several interests, he answers that it was an absolute purchase,-and that he was subrogated to all their rights.
There were judgments against H. E. Vickers upon which executions issued, and at the sale one of the plantations was bought by Mr. Farmer, as attorney of the plaintiffs in execution, for $3,7U0, and another was bought by Vickers’ wife for $33,711, and these two bids were sufficient to pay the special mortgage which is now sought to be enforced. The bids were not complied with. The property was not offered a second time at their risk. If these bids had been complied with, the Mulhern property would have been free from mortgage, and Mrs, Mulhern could never have been pursued for any part of the demand now made upon her. The whole debt would have been extinguished.
While matters were in this condition John Chaffe went from New Orleans to the plantation where Vickers and his wife lived, taking his attorney with him. It is insisted by Mrs. Mulhern that the result of that conference was an agreement that Mrs. Vickers should be released from liability for her bid of over $33,000, and that-the property should be again exposed for sale, should be bought by Chaffe, and then should be resold to Mrs. Vickers (who is separate in property) for a price agreed on. A resale was had in the same year, when the plantation which had been adjudicated at $3,700 on the previous sale, was now bought by John Chaffe for $4,400, and that which had been adjudicated at $33,700 was now bought by the same purchaser for $4,000. The place bought by Mr. Chaffe’s lawyer at the first sale brought an advance of seven hundred dollars, and the place bought by Mrs. Vickers at the first public auction suffered a diminution of $29,700, and this in a few months. In the next month after this purchase by Chaffe, he sold to Mrs. Vickers the place she had bought at the first sale, for $14,572.28.
Chaffe could have held Mrs. Vickers to her bid of thirty three thvusand dollars, and that, with the bid for the other place, paid the mortgage debt. Both his and Mrs. Vickers’ conduct afterwards shew there was an agreement by which she was released by Chaffe from paying her bid, and the arrangement was then entered into, under which the second sheriff’s sale was had, the purchase was made by Chaffe at a price so low as to leave a large margin to cover the Mulhern plantation, and immediately afterwards, before the new year’s planting operations began, he sold to Mrs. Vickers for an advance over his own bid of ten thousand five hundred and seventy two dollars. He was entirely at liberty to remit to Mrs. Vickers any debt she owed him. If he thought it more prudent as a business man not to pursue Mrs. Vickers for the sum she *683 had become apparently liable for, and instead, to agree privately with her on a solution of the complication, such as that subsequently carried out, he had the unquestionable right to do with his own as he willed.
But he cannot do this to Mrs. Mulhern’s injury. He cannot at his. own option change the victim to be sacrificed, and loosing the bands which bound the one, avert the knife from a prostrate Isaac, and plunge it instead into the heart of the lamb which 'he has dragged from the thicket of mortgages in which‘it was entangled. Mrs. Mulhern has been released by his release of Mrs. Yickers.
The lower court held otherwise.
It is ordered, adjudged, and decreed that the judgment of the lower court is avoided and reversed, and that the defendant Mrs. Mulhern have judgment against the plaintiffs on their demand and. for the costs of appeal, and her costs in the lower court.